IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| TROY D. BALL and | ) | |
| SHELLEY K. BALL, | ) | 05-14523 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |

<u>MEMORANDUM OPINION GRANTING MOTION TO EXTEND AUTOMATIC STAY</u>

This matter came before the Court for hearing on January 10, 2006 on the Motion by the Debtors to Extend the Automatic Stay (the "Motion"), filed by the above-referenced debtors (the "Debtors") on December 16, 2005. At the hearing, Jennifer Harris was present on behalf of the Chapter 13 Trustee, Tommy S. Blalock appeared on behalf of the Debtor, and Sarah Miranda appeared on behalf of Countrywide Home Loans.

Based upon a review of the Motion, the evidence and arguments presented at the hearing, and a review of the entire official file, the Court hereby finds as follows:

<u>FACTS</u>

On March 16, 2005, the Debtors filed for chapter 13 protection (Case No. 05-10837) in this Court (the "First Case"). The case was dismissed on May 24, 2005 without reaching confirmation of a chapter 13 plan. On June 9, 2005, the Debtors filed a second chapter 13 case (Case No. 05-11802) in this Court (the "Second Case"). The Second Case was converted to a chapter 7 case on July 25, 2005, and the Debtors received a chapter 7 discharge on October 28, 2005.

The Schedules filed in the First and Second Cases are identical. The class of secured

1

claims in these cases were comprised of four creditors.  Countrywide Home Loan ("Countrywide") held a first mortgage on the Debtors' real property in the amount of $212,000.00; Franklin Credit held a second mortgage on the Debtors' property in the amount of $39,000.00; Volvo Finance held a lien on the Debtors' 1998 S-70 Volvo in the amount of $4,000.00; and World Omni held a lien on the Debtors' 1999 Dodge Durango in the amount of $12,000.00.  The total unsecured claims in the first two cases was $18,898.00.  The Debtors' combined monthly income totaled $4,500.00, and the Debtors' total combined monthly expenses totaled $2,437.00.

On December 12, 2005, the Debtors filed this chapter 13 case (the "Present Case").  On December 16, 2005, the Debtors filed a motion to continue the automatic stay (the "Motion to Extend the Stay").

The class of secured creditors consists of only two creditors in the Present Case. Countrywide Home Loans has a mortgage on the Debtors' home in the amount of $209,000.00[1], and World Omni holds a lien on the 1999 Dodge Durango in the amount of $12,285.00.[2]  There are no unsecured creditors in the Present Case.[3]  The Debtors' combined monthly income is scheduled at $3,926.65, and the Debtors' combined monthly expenses total $1,677.00.  The female Debtor's income has decreased from $2,875.00 per month in the First and Second Cases

---

[1] It is unclear from the record what happened to the $39,000.00 lien owed to Franklin Credit on the second mortgage.  It may have been mistakenly omitted from Schedule D because the Debtor testified that he was in arrears to the second mortgage holder by fifteen to seventeen months.

[2] In the Second Case, Volvo Finance was granted relief from stay on the 1998 Volvo.  The chapter 7 discharge absolved the Debtors of any personal liability on the debt.

[3] The Debtors' unsecured debt was discharged in the chapter 7.

to $2,111.90 per month in the Present Case. The female Debtor was formerly employed as a teacher in Guilford County but was listed as "retired-disabled" in the Present Case.[4] The male Debtor's income decreased from $3,100.00 per month in the First and Second Cases to $2,760.01 per month in the Present Case[5]. The male Debtor testified that he had been out of work often due to his wife's medical problems but that he expected his income to return to the $3,100.00 level shortly. The male Debtor also testified that his wife's income is expected to increase to $3,000.00 per month if she is approved for the permanent disability retirement for which she has applied.[6] Their expenses likely decreased in part from the release of the Volvo. These changes were not addressed at the hearing.

The male Debtor testified that they had not intended to file a chapter 13 right after receiving their chapter 7 discharge, and in fact did not want to file another chapter 13 case at all. He testified that after the chapter 7 case ended, he realized that they still owed a large amount of arrearage to their mortgage creditors.[7] He testified that their intention was to use the female Debtor's retirement pension to pay for the arrearage claims, but that they sought advice on withdrawing the pension funds and were told that it was not in their best interests to do so.

---

[4]The Debtor testified that his wife is disabled and is required to take several prescription medications. He testified that she had a medical procedure the night before the hearing and could not be present.

[5]The Debtor is a salesman for CCP Industries and is paid on a salary and commission basis.

[6]The male Debtor testified that they have been assured that the female Debtor will be approved for the disability retirement for which she applied in April of 2005, and that it was just a matter of waiting for the final decision.

[7]The Debtor testified that he was behind fifteen to seventeen months to both mortgage creditors. The arrearage owed to Countrywide is approximately $24,000.00.

3

The male Debtor testified that he will be able to make the plan payments because his income will return to its former amount and his wife's income will increase when her retirement disability is approved.  Further, the Debtors' expenses have decreased since the filing of the First Case.  The Debtors admitted that they could not afford the proposed plan payments without the female Debtor receiving the increased disability payment.[8]

Countrywide opposed the Motion to Extend the Stay.  Countrywide was granted relief from stay in the Second Case.  Countrywide then initiated foreclosure proceedings and held a foreclosure sale.  The Present Case was filed by the Debtors on the last day of the upset bid period.  Countrywide argued that since the Debtors were granted a chapter 7 discharge in their Second Case, Countrywide's only remedy is against the collateral.  Countrywide further argued that while the Debtors' expenses have decreased, so has the male Debtor's income.

The Chapter 13 Trustee did not oppose the Motion to Extend the Stay, arguing that the Debtors had medical complications that caused their First Case to be unsuccessful and that the Debtors had taken steps to increase their income in order to make plan payments in the Present Case.  The Trustee stated that the Debtors' current income is enough to fund the proposed plan payments and concluded that the Present Case was not filed in bad faith.

<u>DISCUSSION</u>

<u>I.  JURISDICTION AND VENUE</u>

Jurisdiction in this case is proper pursuant to 28 U.S.C. § 157(b)(2)(G).  Venue is appropriate under 28 U.S.C. § 1409(a).

---

[8]Proposed payments under the plan are $2,250.00 per month for sixty months.  All plan payments go to Countrywide.  Despite the male Debtor's testimony, Schedule J shows that the Debtors have excess income sufficient to pay the proposed plan payments.

## II.  STANDARD OF PROOF

If an individual debtor had another bankruptcy case pending within one year of the

present case, then Section 362(c)(3)(A) provides that the automatic stay terminates "with respect

to the debtor" thirty days after filing.  However, 362(c)(3)(B) provides for a continuation of the

stay beyond the initial 30-day period if four requirements are met: (1) a motion is filed; (2) there

is notice and a hearing; (3) the notice and hearing are completed before the expiration of the

original 30-day period; and (4) the debtor proves that the filing of the new case "is in good faith

as to the creditors to be stayed."  In re Collins, No. 05-95149, 2005 WL 3529144, at *2 (Bankr.

S.D. Tex. Dec. 27, 2005).

Pursuant to Section 362(c)(3)(C), a presumption arises that the Present Case was not

filed in good faith as to all creditors if-

> (I) more than 1 previous case under any of chapters 7, 11, and 13 in which the
> individual was a debtor was pending within the preceding 1-year period;
> (II) a previous case under any of chapters 7, 11, and 13 in which the individual
> was a debtor was dismissed within such 1-year period, after the debtor failed to-
>> (aa) file or amend the petition or other documents as required by this title
> or the court without substantial excuse (but mere inadvertence or negligence shall
> not be a substantial excuse unless the dismissal was caused by the negligence of
> the debtor's attorney);
>> (bb) provide adequate protection as ordered by the court; or
>> (cc) perform the terms of a plan confirmed by the court;
> (III) there has not been a substantial change in the financial or personal affairs of
> the debtor since the dismissal of the next most previous case under chapter 7, 11,
> or 13 or any other reason to conclude that the later case will be concluded-
>> (aa) if a case under chapter 7, with a discharge; or
>> (bb) if a case under chapter 11 or 13, with a confirmed plan that will be
> fully performed . . .

If such a presumption arises, then the moving party must carry its burden by clear and convincing

evidence.  11 U.S.C. § 362(c)(3).  If the presumption does not arise, then the moving party must

carry its burden under Section 363(b)(3)(B) by a preponderance of the evidence.  In re Galanis,
No. 05-80038, 2005 WL 3454411, at *10 (Bankr. D. Utah Dec. 7, 2005).[9]

The First and Second Cases were pending within one year prior of the Present Case.  The
First Case was dismissed prior to confirmation of a chapter 13 plan.  The Second Case was
converted to chapter 7 and resulted in the Debtors receiving a Chapter 7 discharge.  The Debtors
meet the requirements of subsection of Section 362(c)(3)(C)(I),which causes the presumption to
arise.  Accordingly, the Debtors must carry their burden under Section 362(c)(3)(B) by clear and
convincing evidence.

### III. DETERMINING GOOD FAITH UNDER 362(c)(3)(B)

The Bankruptcy Code does not explain what a moving party under Section 363(c)(3)(B)
must show in order to demonstrate that a case is filed in good faith.  For purposes of Section
363(c)(3)(B), this Court adopts the analysis of  In re Montoya, 333 B.R. 449 (Bankr. D. Utah
2005), and In re Galanis, No. 05-80038, 2005 WL 3454411, at *12-18 (Bankr. D. Utah Dec. 7,
2005).  Following Montoya, the Galanis court examined the totality of the circumstances test
developed by the Tenth Circuit Court of Appeals in In re Gier, 986 F.2d 1326 (10th Cir. 1993);
this test was developed for the purpose of determining whether a chapter 13 case should be
dismissed or converted for lack of good faith under Section 1307(c).  Galanis, 2005 WL 3454411
at *13.  After a thorough analysis of the Gier factors, both the Montoya and the Galanis courts

---

[9]In In re Paschal, Case No. 05-06133, slip op. at 11 (Small, J., E.D.N.C.  January 6,
2006), the court determined that Section 362(c)(3)(A) only terminates the automatic stay for
creditors that had taken action against the debtor to collect on a particular debt pre-petition.  If a
creditor had taken action against the debtor pre-petition, Section 362(c)(3)(A) would apply to that
creditor.  When that particular situation occurs, Section 362(c)(3)(A) applies, and the debtor may
seek to extend the automatic stay.  In this case, Countrywide had taken action against the Debtors
pre-petition by initiating foreclosure on the collateral.

noted that the focus of Section 362(c)(3)(B) was somewhat different than that of Section 1307(c)

and determined that certain Gier factors may not be valid under the Bankruptcy Abuse

Prevention and Consumer Protection Act of 2005 ("BAPCPA").  The Galanis court concluded its

analysis as follows:

> In contemplating the totality of the circumstances analysis, the Court
> determines that it should consider a few additional factors, not
> contemplated by Gier.  In sum, the Court believes the following factors are
> relevant to the analysis of good faith under 362(c)(3)(B): 1) the timing of
> the petition; 2) how the debt(s) arose; 3) the debtor's motive in filing the
> petition; 4) how the debtor's actions affected creditors; 5) why the debtor's
> prior case was dismissed; 6) the likelihood that the debtor will have a
> steady income throughout the bankruptcy case, and will be able to properly
> fund a plan; and 7) whether the Trustee or creditors object to the debtor's
> motion.

Galanis, 2005 WL 3454411 at *17 (footnote omitted).  A totality of the circumstances test has

also been adopted by the Fourth Circuit Court of Appeals for the purpose of deciding whether a

chapter 13 case has been filed in good faith.  Neufeld v. Freeman, 794 F.2d 149, 152 (4th Cir.

1986); see also In re Herndon, 218 B.R. 821 (Bankr. E.D. Va. 1998)(citing Gier factors).  This

Court will use a totality of the circumstances test for the purpose of determining whether a case is

filed in good faith for purposes of Section 362(c)(3)(B) and will examine the factors developed

by Gier and modified by Galanis in order to apply the test.

The first factor to consider in the Court's analysis is the timing of the Debtor's petition.  If

the Debtor had waited before refiling, with no intention of staying out of bankruptcy, that would

have been evidence of bad faith.  Since creditors often incur substantial costs in trying to enforce

their rights and collect the debts owed to them, if a debtor who could not pay caused such debts

to accumulate, then that debtor would be acting in bad faith.  The Present Case was filed forty-

five days after the Second Case ended , with the Debtors receiving a chapter 7 discharge.  The

male Debtor testified that during that time, the Debtors received notice that they owed a large

arrearage claim to Countrywide; they then tried to solve the problem by using money from the

female Debtor's retirement fund.  They consulted with an administrator of the female Debtor's

retirement fund and were advised against using the pension fund to pay the arrearage.  The

Debtors then decided that the only way for them to cure the arrearage was through a chapter 13

case.  The Debtors took affirmative action to address their debts. The Court determines that this

factor weighs in favor of granting the Debtors' Motion.

       The second factor to consider is how the debts at issue arose. This factor looks primarily

to whether the debts arose from luxury spending, from reoccurring expenses, or whether they

were the result of unavoidable costs, such as medical bills.  <u>Galanis</u>, 2005 WL 3454411 at *23-

24.  The majority of the debts in the First and Second Cases appear to be for recurring personal

purchases and medical expenses.  The only debt at issue in the Present Case is the mortgage

arrearage owed to Countrywide.  The mortgage arrearage appears to be from several months of

the Debtors being unable to pay their mortgage in full each month.  The male Debtor testified

that while his wife was suffering from several medical problems, she was unable to work and lost

income.  He also missed  work and lost some income due to his taking time off to care for his

wife.  In fact, the female Debtor's condition is apparently so severe that she qualifies for

permanent disability/retirement at an age much younger than the average age of retirement.  This

factor weighs toward the granting of the Debtors' Motion.

       The third factor to consider is the Debtors' motive in filing the Present Case.  This is a

wholly subjective inquiry, but nonetheless relevant.  <u>Montoya</u>, 333 B.R. at 460-61.  Based on the

male Debtor's testimony, the Court is convinced that his motive in filing the Present Case was to responsibly address his debt to Countrywide in order to keep his home. This factor weighs in favor of granting the Debtor's Motion.

The fourth factor to consider is how the Debtors' actions affected creditors. Filing for bankruptcy relief will almost always prejudice the debtor's creditors. Galanis, 2005 WL 3454411 at *24. In the Present Case, there are only two scheduled creditors, but they are both secured creditors. Countrywide holds a lien on the Debtors' real property, and World Omni holds a lien on the Debtor's vehicle. While Countrywide's collateral is theoretically appreciating, there appears to be no equity in the property.[10] Further, the Debtors have received a chapter 7 discharge and thus have no personal liability on the debt to Countrywide. Countrywide's only available avenue for collection is against the Collateral. World Omni holds a claim against a 1999 Dodge in the amount of $12,285.00, $2,285.00 of which is unsecured. World Omni is prevented from exercising its rights while its collateral depreciates. This factor weighs against granting the Debtors' Motion.

The fifth factor to consider is why the Debtors' previous case was dismissed. If the previous case was dismissed for the Debtors' attempts to manipulate the system or some other bad conduct, that would bear on whether the Present Case was not filed in good faith. Galanis, 2005 WL 3454411 at *24. The First Case was dismissed prior to reaching confirmation of a chapter 13 plan. The male Debtor testified that his wife experienced significant medical

---

[10]The status of the second mortgage holder is unclear. No such creditor is listed on the Debtors' schedules. However, the male Debtor testified that the Debtors are in arrears fifteen to seventeen month of payments to their second mortgage holder. Assuming that there is a second mortgage holder with a proper lien, there is no equity in the Property.

problems which caused her to lose income and that he also lost income as a result of her illness. The Second Case resulted in a chapter 7 discharge.  This factor weighs in favor of granting the Debtors' Motion.

The sixth factor requires the Court to consider the likelihood, at the time of the filing of the Present Case, that the Debtors could properly fund and maintain a chapter 13 plan.  In the Present Case, the Debtor's schedules indicate that the Debtors have $2,249.65 left over each month with which to pay creditors.[11]  The proposed monthly plan payments are $2,250.00.  The difference between the Debtors' excess monthly income and the proposed plan payments is $0.35.  Given that the Debtors' excess income is sufficient to pay the proposed plan payments and that the male Debtor testified that he expects his wife's income to increase by approximately $900.00 in the near future, the Debtors have established feasibility with clear and convincing evidence.  This factor weighs in favor of granting the Debtors' Motion.

The seventh factor to consider is whether the Trustee or any creditor objects to the Debtors' Motion.  In this case, Countrywide objected to the Debtors' Motion arguing that the Debtors could not overcome the bad faith presumption when they owe a large arrearage claim to Countrywide, that the Present Case was filed on the last day of the upset bid period, and that this is the Debtors' third bankruptcy filing in a nine-month period.  The Trustee supported the Debtors' Motion and stated that, given the medical problems that affected the First Case and the steps that the Debtors have taken to increase their income in order to fund the current proposed plan, she did not believe that the case was filed in bad faith.  This factor neither weighs in favor

---

[11]The Debtors scheduled $3,926.65 in monthly income and $1,677.00 in monthly expenses.

of or against the granting of the Debtor's Motion.

In an analysis of good faith, "[n]o one factor is determinative.  Instead, under this test, a court should consider how the factors operate together in order to determine the existence of good faith."  In re Charles, 334 B.R. 207, 223 (Bankr. S.D. Tex. 2005).  The Court does not merely court the factors weighing in favor of and against a subject good faith finding.  Rather, the Court considered the factors based on the `totality of the circumstances.'"  Charles, 334 B.R. at 226. In light of the above analysis, the Court determines that under a totality of the circumstances analysis the Debtors have carried their burden to show by clear and convincing evidence that they filed the Present Case in good faith.

## CONCLUSION

The Debtors filed the Present Case in good faith as to all creditors, and the automatic stay shall be extended.

This opinion constitutes the Court's findings of fact and conclusions of law.  A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

11

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE                                          )
                                               )
TROY D. BALL and                               )
SHELLEY K. BALL,                               )          05-14523
                                               )
      Debtors.                             )
_____)

## PARTIES IN INTEREST

Troy Dereck Ball

Shelley Kiker Ball

Tommy S. Blalock, III, Esquire

Sarah Miranda, Esquire

Anita Jo Kinlaw Troxler, Esquire